IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT, PENNSYLVANIA

| | |
|---|---|
| RYAN T. CHESTER, | CIVIL DIVISION |
| Plaintiffs, | No. 2:26-cv-02239 |
| vs. | **JURY TRIAL DEMANDED** |
| ROOT, INC. and ROOT INSURANCE COMPANY d/b/a ROOT INSURANCE, a Fictitious Name, | |
| Defendant. | |

**COMPLAINT IN A CIVIL ACTION**

AND NOW, comes Plaintiff, RYAN T. CHESTER, by and through his attorneys, Douglas J. Olcott, Esquire, Ashley M. Henkle, Esquire, and the law firm of Edgar Snyder & Associates, LLC, to file the following Complaint, respectfully averring as follows:

**PARTIES**

1. Plaintiff, RYAN T. CHESTER ("RYAN"), is an adult individual who resides at 486 Swissvale Avenue, Pittsburgh, Allegheny County, Pennsylvania 15221-1126.

2. Defendant ROOT, INC., is believed to be a holding company that directly or indirectly, maintains 100% ownership of each of its subsidiaries, including, among others, Root Insurance Company and Root Property & Casualty Insurance Company, or Root Property & Casualty, both Ohio-domiciled insurance companies, Root Florida Insurance Company, a Florida-domiciled insurance company, which was formed in 2025, and Root Reinsurance Company, Ltd., a Cayman Islands-domiciled reinsurance company. ROOT, INC., was incorporated in the State of Delaware. ROOT, INC.'s headquarters are located at 80 E. Rich Street, Suite 500, Columbus, Ohio 43215.

3. Defendant ROOT INSURANCE COMPANY is an insurance carrier and a subsidiary of Defendant ROOT, INC. ROOT INSURANCE COMPANY was incorporated in Ohio. ROOT INSURANCE COMPANY's headquarters are located at 80 E. Rich Street, Suite 500, Columbus, Ohio 43215. ROOT INSURANCE COMPANY is the registered owner of, and does business as, ROOT INSURANCE, a fictitious name.

4. Defendants ROOT, INC. and ROOT INSURANCE COMPANY are related entities, they will hereinafter be referred to collectively as ROOT INSURANCE.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 28 U.S.C. § 1332 related to diversity of citizenship, including, but not limited to, 28 U.S.C.A. § 1332(a)(1) and/or 28 U.S.C.A. § 1332(a)(2).

6. Plaintiff is a citizen of Pittsburgh, Pennsylvania.

7. The corporate Defendants listed herein are citizens of various diverse states, Delaware and Ohio respectively.

8. The amount in controversy between the parties exceeds the sum or value of $75,000.00, exclusive of interest and costs.

9. The underlying motor vehicle crash giving rise to these claims occurred in Penn Hills Township, Allegheny County, Pennsylvania.

10. The contract of insurance entered into between Plaintiff and Defendant occurred within the jurisdiction of the United State District Court for the Western District of Pennsylvania.

11. Venue is proper in this court pursuant to 28 U.S.C. §1391 (b), because the events giving rise to these claims occurred in the Western District of Pennsylvania.

**UNDERLINED FACTS**

12. The events hereinafter described of occurred on or about November 22, 2022, at approximately 1:01 p.m. on Frankstown Road at its intersection with Ritzland Road in Penn Hills Township, Allegheny County, Pennsylvania.

13. Sadao J. Oka (hereinafter "SADAO") had been proceeding west, operating a 2011 Mini Cooper ("MINI"), VIN # WMWSCU3C59BT252334, bearing PA license plate # LKV7298, on Ritzland Road as he reached the T intersection with Frankstown Road.

14. After initially coming to a stop at the stop sign for westbound traffic on Ritzland Road, SADAO suddenly pulled into the intersection to make a left turn onto Frankstown Road and struck the left rear of RYAN's vehicle as he was proceeding through the intersection with the right-of-way.

15. SADAO failed to yield the right-of-way to RYAN as he approached the intersection while driving on Frankstown Road.

16. SADAO attempted to enter the intersection when it was unsafe to do so and where there was another vehicle approaching the intersection so closely as to constitute a hazard in violation of 75 *Pa.C.S.A*. § 3323(b).

17. The November 22, 2022 crash resulted in severe injuries to RYAN causing him harms and losses.

18. The aforesaid incident was a direct and proximate result of the negligence, carelessness, and/or gross negligence of SADAO as follows:

a. Entering an intersection when it was unsafe to do so and where there was another vehicle approaching the intersection so closely as to constitute a hazard in violation of 75 *Pa.C.S.A*. § 3323(b) and the common law;

b. Failing to yield the right-of-way to before making a left turn at an intersection in violation of75 *Pa.C.S.A.* § 3323(b) and the common law;

c. Driving at a speed that he was unable to stop the MINI within the assured clear distance ahead in violation of 75 *Pa.C.S.A*. § 3361 and the common law;

d. Operating the MINI in careless disregard for the safety of other persons in violation of 75 *Pa.C.S.A.* § 3714 and the common law;

e. Operating the MINI in willful and wanton disregard for the safety of other persons in violation of 75 *Pa.C.S.A.* § 3736 and the common law;

f. Failing to timely, promptly, and adequately apply the brakes on the MINI to avoid striking Plaintiffs vehicle;

g. Failing to take all reasonable and/or necessary measures to avoid striking Plaintiff's vehicle; h. Failing to avoid striking Plaintiff's vehicle by braking, steering away from Plaintiff, or employing any other manner of avoidance;

h. Failing to keep the MINI under proper and adequate control;

i. Failing to maintain a safe, careful, and proper lookout for other roads on the vehicle in order to permit him to safely stop and avoid striking the left rear of Plaintiff's vehicle as it drove through the intersection with the right-of-way;

j. Operating the MINI in a manner that he knew or should have known would result in striking Plaintiff's vehicle;

k. Failing to keep and maintain a proper and adequate lookout;

l. Failing to timely observe Plaintiff's vehicle approaching on Frankstown Road;

m. Operating the MINI while fatigued;

n. Failing to pay proper, safe, and careful attention to the roadway and the conditions then and there existing;

o. Failing to pay appropriate attention to traffic;

p. Failing to be attentive to the road and traffic to be able to bring the MINI to a stop without striking Plaintiff's vehicle;

q. Operating the MINI while distracted; and

r. Operating the MINI in a dangerous and reckless manner under the circumstances then and there existing.

19. As a direct and proximate result of the aforesaid negligence, carelessness, and/or gross negligence of SADO, RYAN suffered the following injuries:

a. Displaced fracture of the navicular requiring RYAN to undergo talonavicular arthrodesis fusion, BMAC;

b. Severe shock strain or sprain of the nerves, muscles, tissues, ligaments and vessels of the musculoskeletal system; and

c. Other serious and severe injuries as the medical records may reveal or which have yet to be diagnosed.

**COUNT I**
**BREACH OF CONTRACT – UNDERINSURED MOTORIST CLAIM**
**RYAN T. CHESTER V ROOT, INC. and ROOT INSURANCE COMPANY**
**d/b/a ROOT INSURANCE, a Fictitious Name,**

20. The averments set forth in Paragraphs 1 through 19 are incorporated by reference as though fully set forth at length herein.

21. At the time of the accident, SADAO was insured by an automobile liability policy issued by American Family Insurance with liability limits of $25,000. Said policy bears a policy number of AI03870679 which was in full effect at the time of the within complained accident.

22. The $25,000 liability limit was tendered by American Family Insurance on or about March 9, 2026

23. The $25,000 liability limit insuring SADAO is insufficient to compensate RYAN for the injuries and damages that he sustained as a result of the subject accident.

24. At the time of the accident, RYAN was insured by the Defendant, Root Insurance Company ("ROOT"). Said policy bears a policy number of 78DG7X which was in full effect at the time of the within complained accident.

25. The ROOT policy provided an underinsured motorist limit of $250,000 to RYAN.

26. RYAN is entitled to assert a claim for underinsured motorist coverage under the policy issued by ROOT because he was the policy holder at the time of the accident.

27. RYAN purchased the policy from ROOT, he elected to pay for underinsured motorist benefits on the policy in order to protect his own financial integrity in the event he suffered injuries due to the negligence of another motorist with insurance that was insufficient to make them whole after sustaining bodily injury.

28. RYAN provided prompt notification to ROOT of the accident, and thereafter fully cooperated with ROOT in all ways required by the insurance policy.

29. ROOT has had the opportunity to fairly evaluate RYAN's underinsured motorist claim.

30. ROOT has failed and refused to extend a reasonable offer of underinsured motorist benefits to RYAN.

31. At all times material hereto, RYAN has fully and completely complied with all terms, conditions, and duties required under the policy.

32. Therefore, RYAN is legally entitled to present an underinsured motorist claim against the policy.

33. As an insured under ROOT's policy of insurance, RYAN is owed a contractual duty by ROOT to promptly investigate, evaluate, and negotiate RYAN's underinsured motorist claim in good faith and arrive at a prompt, fair, and equitable settlement.

34. For the reasons set forth above, ROOT has violated and breached its contractual duty under the policy to its insured, RYAN.

WHEREFORE, RYAN T. CHESTER demands judgment in his favor and against Defendants ROOT, INC. and ROOT INSURANCE COMPANY d/b/a ROOT INSURANCE, a Fictitious Name, for compensatory damages, attorney's fees, court costs and any other damages this Court deems just.

**COUNT II**
**BAD FAITH**
**RYAN T. CHESTER V ROOT, INC. and ROOT INSURANCE COMPANY d/b/a ROOT INSURANCE, a Fictitious Name,**

35. The averments set forth in Paragraphs 1 through 34 are incorporated by reference and fully set forth at length herein.

36. On August 20, 2024, counsel for RYAN sent correspondence to ROOT, requesting evaluation of the underinsured motorist policy limit.

37. Included with the August 20, 2024 correspondence were RYAN's medical records evidencing his treatment related to the accident from December 22, 2022 through July 23, 2024.

38. The medical records provided to ROOT, provide that RYAN sustained various injuries in the accident including injuries to the foot that required surgical intervention.

39. Also included in the August 20, 2024 correspondence was the medical report of orthopedic surgeon, Macalus Hoagan, M.D., dated April 16, 2024. In the report, Dr. Hogan opined that RYAN sustained an intra-articular navicular fracture **secondary to the motor vehicle accident**.

40. Dr. Hogan further opined that the right talonavicular arthritis that is posttraumatic in nature was **definitely associated with his trauma** sustained in the motor vehicle accident.

41. Under Dr. Hogan's care, RYAN underwent orthotics, topical anti-inflammatory care, along with an ASO brace. Due to these methods of care not alleviating pain, RYAN elected to undergo talonavicular arthrodesis fusion.

42. Upon information and belief, prior to refusing to extend an offer to RYAN in response to the August 20, 2024, correspondence, ROOT never had RYAN's medical records reviewed by a doctor.

43. Prior to refusing to extend an offer to RYAN in response to the August 20, 2024, correspondence, ROOT never requested that RYAN submit to an independent medical examination.

44. Root has had ample opportunity to conduct a complete and thorough investigation of RYANS' damages and has refused to do so.

45. ROOT has had ample opportunity to complete a thorough investigation of the facts giving rise to this claim and has failed to do so.

46. The actions of ROOT in the handling of RYAN's underinsured motorist claim constitutes bad faith claims handling as defined under 42 *Pa.C.S.A.* § 8371 as follows:

a. Failing to objectively and fairly evaluate RYAN's underinsured motorist claim and extend a fair and reasonable settlement offer;

b. Failing to conduct a timely and reasonable evaluation of RYAN"s underinsured motorist claim;

c. Failing to arrange an independent medical examination or records review of Plaintiff's treatment in order to evaluate RYAN's claim after its first evaluation of RYAN's claim;

d. Ignoring competent and overwhelming medical evidence substantiating RYAN's claim;

e. Failing to conduct a complete and thorough investigation of the law regarding payment of RYAN's claim;

f. Failing to promptly, objectively, and fairly evaluate RYAN's underinsured motorist claim;

g. Failing to objectively, fairly, and timely evaluate RYAN's claim based on law;

h. Failing to adopt and/or implement reasonable standards in evaluating RYAN's claim;

i. Acting unreasonably and unfairly in response to RYAN's underinsured motorist demand and claim;

j. Failing to act in good faith to effectuate a fair, prompt, and equitable settlement of RYAN's underinsured motorist claim in which Defendant's liability under the policy is clear;

k. Subordinating the interests of its insured and those entitled to coverage to its own financial monetary interest;

l. Failing to promptly offer a reasonable underinsured motorist payment to RYAN;

m. Failing to objectively and fairly evaluate RYAN's underinsured motorist claim and extend a fair and reasonable settlement offer;

n. Violating its contractual and statutory duties and obligations to its insured to fairly and objectively evaluate and settle the underinsured motorist claim;

o. Failing to promptly, reasonably, and adequately investigate RYAN's claim;

p. Failing to promptly, reasonably, objectively, and adequately evaluate and/or review the medical documentation in ROOT's possession;

q. Violating its statutory duty owed to an insured under the policy;

r. Acting unreasonably and unfairly by withholding underinsured motorist benefits justly due and owing to RYAN;

s. Failing to make an honest, intelligent, and objective settlement offer;

t. Causing RYAN to expend monies, including litigation costs and expenses, to pursue his claim; and

u. Causing RYAN to bear the stress and anxiety associated with litigation.

47. ROOT had a statutory and contractual duty to RYAN.

48. At all relevant times, RYAN has fully complied with the terms and conditions of ROOT's policy and all conditions precedent and subsequent to their right to recovery underinsured motorist benefits under the ROOT policy.

49. ROOT has engaged in wanton and reckless conduct with regard to the welfare, interest, and rights of RYAN and is liable for its bad faith conduct.

50. ROOT did not have a reasonable basis for failing to provide benefits available to RYAN under policy.

51. ROOT knew and recklessly disregarded the fact that it had no reasonable basis for failing to provide underinsured motorist benefits to RYAN.

52. ROOT knew that the litigation process is lengthy, expensive, and time consuming, and that it would retain throughout the litigation process, the use of the money unreasonably and wrongfully withheld from RYAN.

53. ROOT's bad faith has caused RYAN to suffer damages and losses including incurring costs, attorney's fees, loss of use of his money, interest, and other damages allowed under 42 *Pa.C.S.A.* § 8371, including court costs and *Pa R.C.P.* 238 damages.

WHEREFORE, RYAN T. CHESTER demands judgment in his favor and against Defendants ROOT, INC. and ROOT INSURANCE COMPANY d/b/a ROOT INSURANCE, a Fictitious Name, for both compensatory and punitive damages, attorney's fees, court costs and any other damages allowable under 42 *Pa.C.S.A.* § 8371.

**COUNT III**
**FIRST PARTY MEDICAL BENEFIT BAD FAITH**
**RYAN T. CHESTER V ROOT, INC. and ROOT INSURANCE COMPANY**
**d/b/a ROOT INSURANCE, a Fictitious Name,**

54. The averments set forth in Paragraphs 1 through 53 are incorporated by reference and fully set forth at length herein.

55. At the time of the accident, RYAN's ROOT policy provided medical expense benefits of $100,000, extraordinary medical benefits of $1,000,000, and work loss benefits of up to $2,500 per month to a maximum of $50,000. ROOT assigned Claim No. J4X883PA to RYAN's claim.

56. ROOT accepted RYAN's first party benefits claim and paid medical bills for his accident-related treatment, including treatment with Dr. Hogan, physical therapy, and primary care visits for his right foot and low back. On May 2, 2024, ROOT's first party adjuster advised RYAN's counsel that all bills had been paid to date.

57. On June 6, 2024, Dr. Hogan performed a right talonavicular arthrodesis and BMAC on RYAN. The surgery was the natural progression of the treatment that ROOT had already paid for.

58. In June 2024, RYAN submitted to ROOT a signed Application for Benefits and medical authorization describing his injuries as a back injury and a fractured foot that required surgery. RYAN also submitted pay stubs and claimed work loss benefits from the date of his surgery until his surgeon released him to return to work.

59. On July 29, 2024, after RYAN underwent surgery, ROOT notified RYAN's counsel that medical bills for services rendered from November 16, 2023 through June 6, 2024 were undergoing an Act 6 Peer Review Organization ("PRO") review by Disability Management Consultants.

60. Under 31 Pa. Code § 69.52(a), an insurer may refer a provider's bill to a PRO only when circumstances or conditions relating to the services provided would cause a prudent person, familiar with PRO procedures, standards and practices, to believe that a PRO determination is necessary.

61. Upon information and belief, no change in RYAN's condition or treatment justified the referral, and ROOT only referred RYAN's bills after learning that RYAN required surgery and that ROOT would incur greater expense.

62. William H. Spellman, M.D. performed the PRO review on August 27, 2024. Dr. Spellman concluded that RYAN sustained a fracture of the navicular bone of the foot and that his treatment was appropriate. Dr. Spellman nonetheless concluded that the treatment was not reasonable or necessary for the accident because RYAN reported the accident history more than a year after the event. That conclusion addressed causation, not the reasonableness or necessity of RYAN's treatment, and exceeded the scope of a PRO review under 75 *Pa.C.S.A.* § 1797(b).

63. By letter dated September 20, 2024, ROOT advised that, based on the PRO review, it would not consider or pay for any treatment beyond April 15, 2024. ROOT thereby applied the PRO determination retroactively to treatment rendered months before ROOT referred the bills for review, including the June 6, 2024 surgery. ROOT then refused payment of RYAN's post-surgical physical therapy bills for dates of service in September 2024.

64. By letter dated October 17, 2024, ROOT closed the Basic First Party Benefit portion of RYAN's claim, stating that it had addressed all known accident-related medical bills it owed per the PRO review. ROOT's payment log reflects that ROOT paid only $2,608.44 of the $100,000.00 in first party benefits available, leaving $97,391.56 unpaid.

65. Additionally, ROOT did not pay any of RYAN's wage loss benefits, leaving $50,000.00 unpaid.

66. Upon information and belief, ROOT never requested that RYAN submit to a physical examination before terminating his first party benefits.

67. The actions of ROOT in the handling of RYAN's first party benefits claim constitute bad faith under 42 *Pa.C.S.A*. § 8371 as follows:

a. Referring RYAN's medical bills for PRO review without circumstances that would cause a prudent person to question the reasonableness and necessity of his care, contrary to 31 Pa. Code § 69.52(a);

b. Using the PRO process to decide causation rather than the reasonableness and necessity of RYAN's treatment;

c. Retroactively denying payment for treatment rendered before ROOT referred the bills for review;

d. Ignoring the opinion of RYAN's treating orthopedic surgeon, Dr. Hogan, that RYAN's navicular fracture and posttraumatic talonavicular arthritis resulted from the accident;

e. Failing to pay work loss benefits after RYAN submitted his application, authorizations, wage and salary verification, pay stubs, and disability notes;

f. Failing to promptly, objectively, and fairly evaluate and investigate RYAN's first party benefits claim;

g. Failing to adopt and implement reasonable standards in evaluating RYAN's claim;

h. Subordinating the interests of its insured to its own financial interests; and

i. Withholding first party medical and work loss benefits justly due and owing to RYAN.

68. ROOT did not have a reasonable basis for terminating and denying RYAN's first party benefits, and ROOT knew or recklessly disregarded its lack of a reasonable basis.

69. As a result of ROOT's refusal to pay bills from the date of his surgery forward, RYAN remains responsible for unpaid accident-related medical bills.

70. ROOT's bad faith has caused RYAN to suffer damages and losses, including unpaid medical expenses, unpaid work loss benefits, loss of use of his money, interest, costs, attorney's fees, and other damages allowed under 42 *Pa.C.S.A.* § 8371.

WHEREFORE, RYAN T. CHESTER demands judgment in his favor and against Defendants ROOT, INC. and ROOT INSURANCE COMPANY d/b/a ROOT INSURANCE, a Fictitious Name, for both compensatory and punitive damages, attorney's fees, court costs and any other damages allowable under 42 *Pa.C.S.A.* § 8371.

Respectfully submitted,

EDGAR SNYDER & ASSOCIATES, LLC

By: */s/ Douglas J. Olcott*

Douglas J. Olcott, Esquire
PA I.D. No. 204851
dolcott@edgarsnyder.com
Edgar Snyder & Associates, LLC
225 North Shore Drive, Suite 200
Pittsburgh, PA 15212
Phone: (412) 394-1000
Fax: (412) 391-1830

Date: October 15, 2026

By: */s/ Ashley M Henkle*

Ashley M Henkle, Esquire
PA I.D. No. 324264
ahenkle@edgarsnyder.com
Edgar Snyder & Associates, LLC
225 North Shore Drive, Suite 200
Pittsburgh, PA 15212
Phone: (412) 394-1000
Fax: (412) 391-1830

Date: October 15, 2026